**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSE SANTIAGO,

      Plaintiff,

v.                                    Case No:   3:13-cv-1288-J-32JBT

BOYD BROTHERS
TRANSPORTATION, INC.,

      Defendant.

_____

## O R D E R

The case is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Strike Paragraphs and Exhibit from Second Amended Complaint (Doc. 43).   Plaintiff has filed a response in opposition (Doc. 44).

### I.   Background

Plaintiff Jose Santiago filed a one count complaint against his former employer, Defendant Boyd Brothers Transportation, Inc., in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida for intentional infliction of emotional distress ("IIED") based on Boyd's delay and denial of his medical treatment and workers' compensation benefits after Santiago suffered two falls at work on February 12, 2007, and October 5, 2007. (Doc. 2).   Boyd removed the case to federal court[1] (Doc. 1), then

_____

[1] Boyd is an Alabama corporation.   Santiago's initial complaint only sought damages in excess of $15,000.   However, when a complaint does not claim a specific amount of damages, removal is proper if it is facially apparent that the amount in controversy exceeds the jurisdictional requirement.   If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.   Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).

moved to dismiss the complaint. (Doc. 11).   The Court conducted a hearing on the motion during which it stated that Santiago needed to inform the Court (1) what specifically Boyd did to him; (2) how Boyd did this; and (3) why Boyd's conduct constitutes extreme and outrageous conduct rising to the level of IIED. The Court granted Boyd's Motion to Dismiss without prejudice to Santiago filing an amended complaint. (Doc 28).

Santiago filed an Amended Complaint (Doc. 29), which Boyd moved to dismiss (Doc. 31).   Santiago then filed a Second Amended Complaint (Doc. 41) with leave of Court, which Boyd again moves the Court to dismiss (seeking in the alternative to strike certain paragraphs and an exhibit for being irrelevant, scandalous, impertinent, and redundant). (Doc. 43).   Santiago filed a response in opposition (Doc. 44) and the matter is now ripe for review.

## II.   Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

In its Notice of Removal (Doc. 1), Boyd cited two cases involving allegations of IIED where Florida juries awarded between $50,000 and $150,000 for pain and suffering. See Cassell v. India & City of Pompano Beach Police Dept., 964 So.2d 190 (Fla. 4th DCA 2007); Macon v. Value Homes, Inc., Pro Check Home Inspection Servs., Case No. 2001-CA-010719-0 (Fla. 9th Cir. Ct. Jan. 10, 2012).   The Court notes that these are not the only cases in which Florida juries have awarded plaintiffs large amounts for pain and suffering in the context of IIED.   See Verdict Form at 3, Medina v. United Christian Evangelistic Ass'n, No. 08-22111 (S.D. Fla. 2009) (No. 231) (awarding plaintiff $250,000 for mental anguish and humiliation); Gardner v, Southside Christian Charities, Inc., 13 FJVR 3-8, 2012 WL 7678085 (Fla. 4th Cir. Ct. Oct, 24, 2012) (awarding plaintiff $300,000 for emotional distress).

Boyd noted that pain and suffering is one of the many damages Santiago has alleged, and suggested that because this pain and suffering is permanent and ongoing, the diversity minimum is satisfied.   Santiago did not move to remand and the Court is satisfied that its diversity jurisdiction is properly invoked.   28 U.S.C. § 1332.

8(a)(2).   While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).   A claim is facially plausible when the Court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct.   Id.   However, this "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully," and where the complaint only alleges facts "merely consistent with" liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation omitted).   The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all inferences therefrom.   La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

The Eleventh Circuit follows a two-pronged approach in its application of the holdings in Iqbal and Twombly.   First, "eliminate any allegations in the complaint that are merely legal conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal at 678).   In applying these principles, the Court can infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."   Id. (quoting Iqbal at 682).

### III.    Discussion

Boyd contends that the allegations regarding Boyd's conduct are insufficient as a matter of law to state a cause of action for IIED.   While the workers' compensation system provides employers with immunity for negligent workplace conduct, this immunity does not extend to intentional tortious conduct.   Aguilera v. Inservices, Inc., 905 So.2d 84, 90 (Fla. 2005).   Florida law recognizes the tort of IIED in the workers' compensation context,[2] and the tortious conduct does not have to be absolutely "independent of the workers' compensation claim," since without the existence of the claims process the parties would never have been in conflict.   Id. at 93.   Hence, Boyd's argument that Santiago cannot allege sufficient facts to state a claim for IIED since the instant case and the workers' compensation action are inextricably intertwined, is without merit. However, employees are not permitted to transform simple bad faith and minor delays in payment into an actionable tort cognizable in Florida.   Id. at 92.

Under Florida law, to state a claim for IIED, the plaintiff must establish the following: (1) defendant acted recklessly or intentionally; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused the plaintiff's emotional

---

[2] Under Fla. Stat. §440.11(1)(b), there is an exception to the exclusivity of the workers' compensation remedy when an employer commits an intentional tort that causes the injury or death of the employee.   An employer's actions shall be deemed to constitute an intentional tort only when the employee proves, by clear and convincing evidence, that: (1) the employer deliberately intended to injure the employee; or (2) the employer engaged in conduct that the employer knew was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.

Because Santiago is alleging IIED, an intentional tort, Boyd is incorrect when it argues that this Court lacks subject matter jurisdiction.

distress; and (4) plaintiff's emotional distress was severe.   Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985).   Courts uphold claims for IIED in only "extremely rare circumstances."   Id. (quoting Gonzalez-Jimenez de Ruiz v. United States, 231 F.Supp.2d 1187, 1199 (M.D. Fla. 2002)).

Here, Boyd argues that Santiago has failed to allege facts showing that its conduct was sufficiently outrageous.   Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous.   Frias v. Demings, 823 F.Supp.2d 1279, 1288-89 (M.D. Fla. 2011).   In defining what constitutes "outrageousness," the Florida Supreme Court has adopted the language of comment d to the Restatement (Second) of Torts, which states:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.   Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.   Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Metropolitan Life, 467 So.2d at 278 (citing Restatement (Second) of Torts, §46).[3]   This high standard for evaluating IIED claims extends to the context of workers' compensation

---

[3] By way of example, claims for IIED were dismissed in the following cases: Foreman v. City of Port St. Lucie, 294 F. App'x. 554 (11th Cir. 2008) (applying Florida law, an officer pointing a BB gun at a person and pulling the trigger was not sufficiently outrageous even though wife watched incident without knowing BB gun was unloaded); Bilbrey v. Meyers, 91 So.3d 887, 892 (Fla. 5th DCA 2012) (affirming dismissal of claim for IIED based on allegations that over an almost two-year period, the pastor repeatedly and falsely told various people that the plaintiff was a homosexual with an immoral character, and tried to break up his relationship with his fiancée).

In contrast, claims were upheld in the following cases: Williams v. City of

cases.   For example, in <u>Aguilera</u> the insurance carrier not only denied the plaintiff's

medical treatment and blocked the plaintiff's receipt of medication but also unilaterally

cancelled some of the plaintiff's medical testing while nevertheless insisting on the

administration of tests that were painful to the plaintiff and contraindicated by his then-

present medical condition.   The case manager refused to authorize the plaintiff's

emergency surgery and secretly appeared at the plaintiff's medical appointment while

urging the plaintiff to lie to his attorney about the carrier's presence at the appointment.[4]

<u>Aguilera</u>, 905 So.2d at 88.

  Applying these principles to the present case, and construing Santiago's claims in

the light most favorable to him, the undersigned finds that the Second Amended

Complaint fails to state a claim for IIED because the factual allegations do not establish

that Boyd engaged in sufficiently outrageous conduct beyond mere delay and simple bad

faith.   Santiago devotes most of the space in his Second Amended Complaint to what

he did and how he felt – seventeen paragraphs in the Second Amended Complaint

provide a chronology of the occasions on which he filed Petitions for Benefits, and

---

<u>Minneola</u>, 575 So.2d 683 (Fla. 5th DCA 1991) (upholding claim where police officers
displayed grotesque photographs and videotape of a family member's autopsy to non-
police officers, allegedly for entertainment purposes); <u>Dependable Life Ins. Co. v. Harris</u>,
510 So.2d 985 (Fla. 5th DCA 1987) (upholding claim where on at least two occasions
insurance company had made vicious threats to policy holder known to be seriously ill
and near bankruptcy).

  [4] In <u>Aguilera</u>, the Florida Supreme Court expressed no opinion as to whether the
plaintiff would ultimately be able to prevail at trial on his IIED claim.   The court held only
that the plaintiff's allegations were sufficient to preclude dismissal under a theory of
immunity as a matter of law.   <u>Aguilera</u>, 905 So.2d at 98 (quashing the district court's
decision to dismiss the complaint and remanding the case with instructions to return it to
the trial court for further proceedings).

fourteen paragraphs state that Boyd's denials caused him to incur extreme physical and emotional harm.

Only six allegations specifically describe Boyd's conduct: (1) Boyd failed to respond to Santiago's Petition for Benefits on ten occasions;[5] (2) it denied or delayed paying him monetary benefits;[6] (3) it hired adjusters to handle Santiago's workers' compensation claim who were not licensed in the state of Florida;[7] (4) it challenged the

---

[5] Fla. Stat. §440.13(3)(d) provides that a carrier who fails to respond to a written request for authorization for referral for medical treatment by the close of the third business day after receipt of the request consents to the medical necessity for such treatment.   Thus mere failure to respond to Santiago's benefits cannot form the basis of an intentional infliction of emotional distress claim in the workers' compensation context.

[6] In Sullivan v. Liberty Mut. Ins. Co., the court reasoned that if delay in providing services could become the subject of an independent suit, the legislatively-designed exclusivity of the act could be destroyed because "minor delays in getting medical services…could become the bases of independent suits, and these could become many and manifold indeed.   The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts.   The objective of the legislature and the whole pattern of workmen's compensation could thereby be partially nullified."   367 So.2d 658, 661 (Fla. 4th DCA 1979).

[7] Boyd cites three cases in support of its proposition that the licensure and knowledge of its adjusters cannot form the basis for an IIED claim.   See Naughright v. Weiss, 826 F.Supp.2d 698 (S.D.N.Y. 2011); Grace v. Royalty Indem., 949 So.2d 1074 (Fla. 3d DCA 2007); Aguirre v. Tristar Risk Mgmt, 2011 WL 248199 (S.D. Tex. 2011).   In these cases, courts dismissed plaintiffs' claims for IIED based on their allegations that insurance adjustors had no medical training or licensure whatsoever.
Here, Santiago never alleges that Boyd's adjustors have no licensure whatsoever; rather, he only alleges that Boyd's adjustors held themselves out to be licensed adjustors in Florida when they were never licensed in this state.   However, Fla. Stat. §626.112(1)(a) only requires that adjustors be licensed.   There is no specific statutory requirement that the adjustors of out-of-state insurers be licensed in Florida.   While Santiago alleges that Boyd's adjustors falsely held themselves out to be licensed in Florida, Santiago has not cited any authority holding that this conduct could form the basis to state an IIED claim.   As the Florida Supreme Court noted in Metropolitan Life, "it has not been enough [to state an IIED claim] that the defendant has acted with an intent which is tortious or even criminal."   Id. at 278.

medical necessity of various benefits;[8]  (5) it did not comply with an OJCC order;[9]  and

(6) it provided input concerning Santiago's treatment.[10]   Even taking all the allegations

as true, they do not rise to the level of outrageousness necessary to sustain a claim for

IIED under Florida law.   See Aguilera, 905 So.2d 84, 88.   The Court has also

considered Santiago's argument that allegations insufficient on their own can together

form a pattern of conduct that is intolerable.   However, even considering them

---

[8]  Under Fla. Stat. §440.192, within fourteen days after receipt of a petition for benefits, a carrier must either pay the requested benefits without prejudice to its right to deny within 120 days from receipt of the petition or file a response to petition with the Office of the Judges of Compensation Claims ("OJCC").   A carrier must list all benefits requested but not paid and explain its justification for nonpayment in the response to petition.
   Under Fla. Stat. §440.20(4), if an employer is uncertain of its obligation to provide all benefits or compensation, it may investigate in good faith an employee's entitlement to benefits.   Thus Boyd's challenging the medical necessity of various benefits cannot form the basis of an intentional infliction of emotional distress claim in the workers' compensation context since such challenges are permitted under the statutory scheme.

[9]  Under Fla. Stat. §440.24(2), in any case where the employer is insured and the carrier fails to comply with any OJCC order or court within 10 days after such order becomes final, the license of the carrier to do insurance business within the state shall be suspended until the carrier complies with the order.   If the employer is a self-insurer and fails to comply with any compensation order of a judge of compensation claims or court within 10 days after such order becomes final, Fla. Stat. §440.24(3) provides that the employer's authorization to be a self-insurer shall be revoked.
   However, in Sheraton Key Largo v. Roca, the court rejected the argument that an employer/carrier's noncompliance with an OJCC order could become the basis for an IIED claim.   710 So.2d 1016 (Fla. 3d DCA 1998).   Although the court in Liberty Mut. Ins. Co. v. Steadman did allow an employer/carrier's noncompliance with an OJCC order for a lung transplant to become the basis for an IIED claim, it only was sufficient because the employer/carrier had knowledge of the other's peculiar susceptibility to emotional distress by reason of some physical or mental condition.   968 So.2d 592 (Fla. 2d DCA 2007).   Here Santiago has not alleged any physical or mental condition which renders him peculiarly susceptible to emotional distress.

[10]  Specifically, this input included Boyd's hiring outside nurse care managers to try and convince Dr. Mason not to provide Santiago ointment and investigating whether arthroscopic surgery was necessary for Santiago.

cumulatively, Santiago's allegations are not enough to rise to the level of outrageousness necessary to state a claim for IIED under Florida law.[11]

The conduct of Boyd alleged in Santiago's Second Amended Complaint is insufficient, as a matter of law, to state a claim for IIED.   Because this is Santiago's third effort to state a claim, and because he has presumably alleged all the facts at his disposal, the Court will dismiss the case with prejudice.[12]

Accordingly, it is hereby **ORDERED** that Boyd's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 43) is **GRANTED**.[13]   Santiago's Second Amended Complaint (Doc. 41) is **DISMISSED WITH PREJUDICE**. The Clerk should close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 22nd day of December, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

---

[11] Although Boyd's seven-year pattern of delays and denials could be indicative of bad faith, Santiago does not cite any authority suggesting that delays and denials alone allow a plaintiff to escape the exclusivity of the workers' compensation law and state a claim for IIED.   The case Santiago cites, Liberty Mut. Ins. Co. v. Steadman, 968 So.2d 592, 594 (Fla. 2d DCA 2007), can be distinguished from this case because delay in that case was paired with defendant's knowledge of plaintiff's particular susceptibility. Because Florida's workers' compensation laws contain mechanisms to insure timely payment and provide an array of sanctions which may be imposed when a carrier wrongfully withholds payment, a protracted period of delays and denials in itself does not allow a plaintiff to escape the exclusivity of the workers' compensation law and state a claim for IIED.   There has to be more.   See Assoc. Indus. of Fla. Prop. & Cas. Trust v. Smith, 633 So.2d 543, 544 (Fla. 5th DCA 1994).

[12] Because the Court is dismissing the case with prejudice for failure to state a claim for IIED, there is no need to address Boyd's argument that Santiago's claim is barred by judicial estoppel.

[13] Because the Court is granting Boyd's Motion to Dismiss Plaintiff's Second Amended Complaint, Boyd's alternative Motion to Strike Paragraphs and Exhibit from Second Amended Complaint (Doc. 43) is **DENIED** as moot.

eh
Copies to:

Counsel of record